## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DANIELLE SHAPIRO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:  1:18-cv-02588-TSC** |
| **v.** | ) | |
| | ) | |
| **HOWARD UNIVERSITY, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS[1]

NOW COMES Defendants Howard University (the "University") and Howard University Hospital (the "Hospital")(collectively the "Defendants" or "Howard") and submits this Memorandum in support of their Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the Complaint with prejudice.  For the reasons set forth below, all claims should be dismissed as to all Defendants for failure to state a claim upon which relief may be granted.

### I.    INTRODUCTION

After voluntarily resigning from Howard, Plaintiff Danielle Shapiro ("Plaintiff" or "Shapiro") filed the subject misguided three-count Complaint against Howard alleging: (1) discrimination based on her race, religion, gender, and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation under Title VII; and (3) discrimination under the

---

[1]   Plaintiff is hereby placed on notice that this motion may be converted to a motion for Summary Judgment.  The Federal Rules of Civil Procedure provide that a motion to dismiss may be converted to one for summary judgment at the discretion of the trial court, so long as the parties have notice and an opportunity to respond. Sup. Ct. R. Civ. P. 12(d); _Flynn v. Tiede-Zoeller, Inc._, 412 F. Supp. 2d 46, 50 (D.D.C. 2006); _Kim v. United States_, 632 F.3d 713, 719, 394 U.S. App. D.C. 149 (D.C. Cir. 2011); _Ryan-White v. Blank_, 922 F. Supp. 2d 19, 22 (D.D.C. 2013).

Americans with Disabilities Act of 1990 ("ADA"). The entirety of Plaintiff's Complaint requires dismissal with prejudice as she fails to state any claim upon which relief may be granted.

Shapiro's Complaint requires dismissal as it is nothing more than an unintelligible and rambling narrative of allegations that in no way relate to any cognizable legal remedy. While Shapiro is *pro se*, Howard should not have to defend itself further against the inarticulate allegations made by Shapiro.

To the extent Shapiro's Complaint is considered by the Court, she has failed to plead any plausible cause of action under Title VII or the ADA. Shapiro first alleged Title VII discrimination under either a hostile work environment of disparate treatment theory. Both theories seemingly alleged by Shapiro must fail. Under a hostile work environment theory, Shapiro has not plead any indicia of an objectively hostile work environment and merely articulates several isolated disagreements that she had with her supervisors. Under a disparate treatment theory, Shapiro does not plead any adverse action taken against her by Howard. Rather, she voluntarily resigned from her position prior to being placed on a performance improvement plan ("PIP"). Nonetheless, placement on a PIP is not an adverse employment action under Title VII.

Similarly, Shapiro does not state a claim for retaliation under Title VII as she fails to plead any necessary adverse employment action for a retaliation claim considering she voluntarily resigned from Howard.

Finally, Shapiro does not state a claim for discrimination under the ADA for failure to accommodate a disability. Specifically, she has not identified any disability that substantially limits one or more of the major life activities covered by the ADA. Rather, Shapiro merely states that she had an infirmity that required temporary assistance; such temporary infirmity is

definitively not a disability protected by the ADA.  Moreover, she failed to request any accommodation, or put her employer on notice of a need for one.

As such, Shapiro's Complaint requires dismissal with prejudice for failure to state a claim upon which relief may be granted.

## II.    FACTUAL BACKGROUND

### a.  Relevant National Policies Applying to Medical Residents

Howard operates several medical residency programs, which provide postgraduate training to medical professionals. The residency programs at Howard are educational programs and their standards are set forth in the Accreditation Council for Graduate Medical Education ("ACGME"). Compl. ¶ 11. Residents are to learn through experiential training, informal feedback, written evaluations, and through formal summative feedback. *Id*. The ACGME has standards that govern resident performance, which includes competency in: professionalism; and interpersonal and communication skills. *See* Exhibit 1, Correspondence to Shapiro, April 26, 2017.[2]

One of the residency programs at Howard is the Family Medicine Residency Program. The American Board of Family Medicine ("ABFM") sets forth the standards for residents in Howard's Family Medicine Department.

The ABFM sets forth stringent national attendance requirements for residents whereby the residents are required to receive a minimum amount of training in order to receive certification in

---

[2]    Attached to this Memorandum, Howard attaches the relevant documents that Shapiro directly cites. For instance, Shapiro references the April 26, 2017 correspondence at ¶¶ 12, 16. Attachment of any material document directly referenced by Shapiro need not convert this motion into a motion for summary judgment. *See Chamberlain v. American Honda Finance Corp.*, 931 A.2d 1018, 1025 (D.D.C. 2007) (*citing Venture Associates Corp. v. Zenith Data Systems Corp*., 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")).

the field. Specifically, the ABFM requires that residents are expected to perform their duties for a minimum of 11 months of each calendar year. Compl. ¶ 48. Under the ABFM requirements, "absence from the [residency] program for vacation, illness, personal business, leave, etc., must not exceed a combined total of one (1) month per calendar year." *Id*. To that point, the ABFM defines a calendar month as "21 working days or 30 calendar days." *Id*. If a resident is absent for more than a calendar month (regardless if the absence is for illness or disability) then the resident will not be permitted to advance to the next year of residency. *Id*. According the ABFM guidelines, a resident must make up any absence exceeding one calendar month before advancing to the next year of residency. *Id*. There is no carve-out in the ABFM guidelines for a resident's absent days relating to any alleged infirmity, illness or disability. This is intuitively logically because a health care professional needs to obtain a baseline of training days before advancing in their residency program.

### b.  Howard's Internal Policies Regarding Employment

Separate from the national ACGME and ABFM guidelines, Howard has its own internal policies outlining the terms and conditions of employment at Howard.

The Howard University Employee Handbook (the "Handbook") contains permissive language regarding progressive discipline that the University "endeavors" to provide its employees. *See* Exhibit 2, Howard University Employee Handbook.[3] Additionally, the preamble

---

[3]    Howard attaches the entirety of the section of the Employee Handbook cited by Shapiro at Compl. ¶ 13. The Handbook is publicly available at:

http://www.howard.edu/secretary/documents/HowardUniversityEmployeeHandbook-2016.pdf.

to the relevant section of the Handbook states "[the] University reserves the right to omit any or all of the levels of discipline depending on the severity of the offense."

There is no mandatory process required for a supervisor to discipline a subordinate employee. Rather, the Handbook states that a supervisor "should" counsel an employee at the early signs when the supervisor becomes concerned about the employee's performance, conduct, or attendance. Compl. ¶ 13. If the counseling is ineffective, the supervisor "should" schedule a coaching meeting with the employee to outline the specific areas of concern. *Id*. After informal counseling, the Handbook contemplates Formal Discipline, which includes a: Letter of Admonition; Letter of Warning and Performance Improvement Plan ("PIP"); Final Warning; and Termination. *Id*. None of the language in the Handbook uses mandatory language (i.e. shall, must, etc.) and therefore any such process is aspirational; no particular sequence of performance counseling is required.

### c. Shapiro's Employment History and Substandard Work Performance

Shapiro began employment with Howard on or about July 1, 2016 as a second-year resident physician in the Family Medicine Department. Compl. ¶ 1. At all relevant times Dr. Oladunni Filani, the Family Medicine Residency Program Director, was Shapiro's director supervisor. Compl. ¶ 7. Additionally, during the time period at issue, Dr. Mark Johnson was the Chair (and supervisor) of the entire Family Medicine Department.

In early 2017, Shapiro received a promotion letter indicating that Howard *intended* to promote her to her third year of residency beginning on July 1, 2017. Compl. ¶ 3; *See* Exhibit 3, Correspondence to Shapiro, January 27, 2017. However, this promotion letter was not a definite guarantee of promotion. Rather, consistent with ACGME guidelines, the letter explicitly states that her "reappointment is contingent upon [her] continued demonstration of professional and medical

competence and the successful completion of the current academic year." *Id*.  Obviously, in order to be "promoted" Shapiro would need to successfully complete the final six months of her 12-month program.

Nonetheless, Shapiro pleads numerous instances where her employment conduct was substandard.[4]  In November of 2016, Shapiro admits that she did not attend a required work meeting because the "notice of the meeting was unclear and given at such short notice." Compl. ¶ 15. While Shapiro claims that she was singled out for not attending the meeting, she hypocritically states that Dr. Filani sent an email to all the residents that a "few" residents did not attend the meeting. *Id*.

In February of 2017, Dr. Filani received a complaint from a doctor at an outside clinic, Dr. Joshua Kolko, that Shapiro refused to treat patients. Compl. ¶ 18.  Dr. Kolko  advised Dr. Filani that Shapiro affirmatively stated that "she would not be involved in deliveries" and "called out sick this [morning]." *See* Exhibit 4, Correspondence from Dr. Kolko, February 16-23, 2017.[5] The doctor had previously advised Dr. Filani that Shapiro had a history of poor attendance and he requested that backup be provided in the event Shapiro did not report to the clinic for her scheduled duties. *Id*.

---

[4]      In her Complaint, Shapiro alleges at length an incident where she allegedly was struck by a needle during a surgical procedure and filed a complaint with OSHA. Compl. ¶¶ 52-61. Shapiro has also alleged that "violated" HIPAA by not allowing her to amend her own medical records. Compl. ¶¶ 56-57.  These allegations are not relevant to her claims brought in the subject lawsuit of Title VII discrimination and retaliation as well as discrimination under the ADA. To that point, Shapiro has separately filed complaints with the Department of Labor for the alleged OSHA violation (USDOL/OSHA Case No.: 3-0050-17-081) and the Department of Health and Human Services ("HHS") for the alleged HIPAA violation (HHS Case No.: CU-17-278305). Neither of these federal agencies have adjudicated Shapiro's claims in her favor and HHS closed her matter on September 14, 2017 without finding any breach of HIPAA by Howard.

[5]      Shapiro directly cites this correspondence at Compl. ¶¶ 17-19.

Shapiro pleads a separate event in February of 2017 where she was openly insubordinate to Dr. Filani and undermined his directives given to his subordinate residents. Specifically, Dr. Filani advised the residents to re-take an online test proctored through an outside vendor. Compl. ¶¶ 20-22. In direct defiance to Dr. Filani, Shapiro circumvented Dr. Filani by contacting the outside vendor and formed her own opinion that the residents were not required to retake the test. *Id*. *See* Exhibit 5, Correspondence from Dr. Filani, February 28, 2017.[6] Shapiro then emailed the residents and advised that the test was not required to be re-taken – in direct contrast to Dr. Filani's (her supervisor's) instruction.

Due to concerns regarding Shapiro's work performance, on March 9, 2017, Dr. Johnson, the Chair of the Family Medicine Department, sent Shapiro a warning letter. Compl. ¶ 30; *See* Exhibit 6, Correspondence from Dr. Johnson, March 9, 2017. The warning letter states that Shapiro refused to complete work assignments, was insubordinate, and failed to adhere to work requirements. The letter further chronicles that Shapiro improperly instructed interns to report to the Labor and Delivery Suite, and failed to provide proper oversight of the interns. Shapiro's actions had posed a "potential risk to patient safety." *Id*. Shapiro was advised that she could not refuse legitimate work instruction and had to provide proper oversight to the interns. The letter noted that failure to appropriately remedy her behavior *may* result in discipline. However, at that point no specific discipline was contemplated or meted out.

On April 12 and 13, 2017, Dr. Filani wrote Shapiro two separate correspondences with the purpose of notifying Shapiro that she was scheduled to miss more than one month of work, which would delay her advancement to her third year of residency per the ABFM requirements. Compl. ¶¶ 46-49. The April 12, 2017 correspondence states that Shapiro had missed 12 work days and was

---

[6]     Shapiro directly cites this correspondence at Compl. ¶¶ 20-22.

scheduled to take leave for an additional 10 work days from April 14-27, 2017, which would bring her to 22 missed work days. *See* Exhibit 7, Correspondence from Dr. Filani, April 12, 2017.  Her absences would put her above the ABFM requirements requiring that a resident not be absent more than 21 work days, regardless of the reason for the absence. Dr. Filani's subsequent April 13, 2017 correspondence corrected the inventory of Shapiro's absent days, and notified her that she was scheduled to be absent for 27 work days and 33 calendar days. *See* Exhibit 8, Correspondence from Dr. Filani, April 13, 2017.  There was no probation or other disciplinary action mentioned in the April 12 and 13, 2017 correspondences but rather those correspondences were provided to Shapiro to provider her "with helpful information that will allow [her] to plan [her] absences [.]" *Id*.

On or about April 26, 2017, Shapiro was notified that she would be placed on probation. Compl. ¶ 16. The reasons for the probation included but were not limited to: an inability to demonstrate professional conduct and accountability; poor decision making in the management of patients in the clinical setting; an inability to professionally, respectfully and effectively communicate with team members; and an inability to develop relationships and effectively communicate with physicians, healthcare professionals, and healthcare teams.  Compl. ¶¶ 16, 19, 51; Exh. 1.  Per the April 26, 2017 correspondence, Shapiro was to meet with Dr. Filani on April 28, 2017 so that Dr. Filani could provide her the actual PIP document[7] and answer any questions from Shapiro. Shapiro does not plead that she attended the April 28, 2017 meeting or that she received the actual PIP document.

---

[7]     The April 26, 2017 correspondence was not the actual PIP. Rather, the April 26, 2017 notified Shapiro that she was going to be placed on a PIP that would be memorialized in a separate document after and in-person meeting.

8

Rather than meet with Dr. Filani to discuss and receive the PIP, on May 2, 2017, Shapiro voluntarily resigned from Howard. Compl. ¶ 70; *See* Exhibit 9, Correspondence from Shapiro, May 2, 2017.[8]

### d.  Procedural History

On or about June 5, 2017, Shapiro filed a Charge of Discrimination at the EEOC against the Hospital. The Charge alleged discrimination based on race, sex, religion, national origin and disability as well as retaliation. On or about August 16, 2018 the EEOC issued a Dismissal and Notice of Rights which indicated the EEOC was "unable to conclude" that the Hospital violated any applicable statutes.

### e.  The Subject Lawsuit

On or about November 9, 2018 Shapiro filed the subject inarticulate lawsuit against the University and the Hospital.[9] [10]   ECF at 1. The three-count lawsuit alleges: (1) discrimination under Title VII  based on Shapiro's race, gender, religion, and national origin; (2) retaliation under Title VII; and (3) discrimination under the ADA.[11]

---

[8]      Shapiro alleges that during settlement discussions between Howard and her prior counsel, her attorney advised her that Howard would be willing to revoke her probation if she voluntarily resigned. If this allegation plead by Shapiro is true, it would be barred from being introduced to this Court under the well-established Fed. R. Ev. 408 prohibiting the introduction of settlement offers "made during compromise negotiations [.]"

[9]      Shapiro improperly filed the subject lawsuit against both the University and the Hospital. The proper named party is only the University as the Hospital is not a separate legal entity from the University. Howard respectfully requests that the Hospital be dismissed.

[10]      Defendants note that Plaintiff's has flouted this Court's Rules at this early stage of litigation. Specifically, the Complaint was largely a 12 page single spaced document in violation of Local Civil Rule 5.1(d). ECF at 1 and 5. Additionally, Plaintiff did not seek to confer with Howard prior to filing her Motion for Entry of Default in violation of  Local Civil Rule 7(m). ECF at 10.

[11]      Shapiro also passingly mentions that she is seeking relief under Section 11(c) of OSHA. Compl. at p.4. Shapiro does not otherwise mention relief under OSHA at any other juncture in the

All of these claims require dismissal as her Complaint fails to state a claim upon which relief may be granted. First, her Complaint is an unintelligible and rambling narrative of conclusory allegations to which Howard cannot reasonably respond.

Moreover, Shapiro's lawsuit requires dismissal with prejudice as she cannot state a claim under Title VII or the ADA. Specifically, Howard took no legally cognizable adverse action against Shapiro and she voluntarily resigned from Howard. At core, Shapiro admits that she was counseled about her work performance and she did not meet the national ABFM attendance requirement. Moreover, Shapiro does not plead a disability requiring accommodation under the ADA, or that she ever requested an accommodation. Shapiro's failure to accept the facts, to which she has plead, does not establish a plausible cause of action under any legal theory.  As such, Plaintiff's Complaint requires dismissal with prejudice in its entirety.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action based upon the plaintiff's "failure to state a claim upon which relief can be granted."  In essence, a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The Federal Rules of Civil Procedure require that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds for entitlement] to relief, a plaintiff must tender "more than labels and conclusions" or "a formulaic

---

Complaint. Moreover, as stated above at footnote 4, Shapiro has filed a retaliation claim at OSHA that has not yet been decided by that agency. As such, any OSHA claim should be dismissed as the allegations are cursory and not yet ripe.

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, a complaint must contain sufficient factual matter, which if accepted as true, states a claim to relief that is plausible on its face. *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

In considering a 12(b)(6) motion to dismiss, a court must accept as true all of the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citation omitted). However, a court "need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Id*. Nor must the court accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. By the same token, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 218-219 (D.D.C. 2012).

While complaints filed by *pro se* litigants are held to a less stringent standard than those prepared by legal counsel and should be liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), *all complaints* must satisfy the minimal pleading requirements of the Rules. *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987) (a *pro se* litigant must comply with the federal rules).

## IV.    ARGUMENT

### a.  Plaintiff's Complaint is Unintelligible and should be Dismissed for Failure to State a Claim Upon Which Relief may be Granted

Courts have unhesitatingly dismissed complaints, like plaintiff's, that: are "vague and, in some respects, unintelligible" *Wallach v. City of Pagedale, Missouri*, 359 F.2d 57, 58 (8th Cir. 1966); present "a confused and rambling narrative of charges and conclusions," *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1997); or are "so confused, ambiguous, vague or otherwise unintelligible that [their] true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). *See also Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (The dismissal of a complaint on the ground that it is unintelligible is unexceptionable.); *Hamrick v. United States*, 775 F. Supp. 2d 140, 142 (D.D.C. 2011) (dismissing complaint *sua sponte* rather than require defendants to waste unnecessary time and resources attempting to respond to plaintiff's plethora of nearly incomprehensible claims).

By presenting an accumulation of disjointed information and baseless allegations, "plaintiff has rendered it impossible to comprehend the factual basis of [her] claim." S*ee Whitehead v. Clinton*, No. 99-2891, 1999 WL 33326727 (D.D.C. 1999); *Sebastian v. Wenzel*, 2004 U.S. Dist. LEXIS 6257, 2-3 (D.D.C. 2004). Under such circumstances, the Court is obligated to dismiss the complaint without prejudice for failing to comply with Rule 8(a) and failure to state a claim under Rule 12(b)(6).

Shapiro's Complaint requires dismissal for failure to state a claim upon which relief may be granted as it is nothing more than a "rambling narrative of charges and conclusions" and "its true substance, if any, is well disguised[.]" *Brown,* 75 F.R.D at 499 (D.D.C. 1997); *Salahuddin*, 861 F.2d at 42 (2d Cir. 1988). Howard should not be forced to respond to the meandering stream of consciousness Shapiro pleads in her Complaint.

**b. Shapiro Claims Brought Under Title VII (Counts I-II) Fail to State a Claim Upon Which Relief May be Granted**

The legal framework for reviewing cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* is set out by the United States Supreme Court. *See McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802(U.S. 1973); *Atlantic Richfield Company v. District of Columbia Commission on Human Rights*, 515 A.2d 1095 (D.C. 1986); *Wisconsin Avenue Nursing Home v. District of Columbia Commission on Human Rights*, 527 A.2d 287 (D.C. 1987). This standard requires the employee first establish a *prima facie* case. The burden then shifts to the employer to offer a legitimate non-discriminatory reason for the action. The Plaintiff then bears the ultimate burden of demonstrating that discrimination or retaliation was the real reason for the action. *McDonnell Douglas Corporation*, 411 U.S. at 802-806.

Here, Plaintiff cannot meet the first prong of the *McDonnell Douglas* burden shifting as she not plead a plausible *prima facie* case of discrimination or retaliation.[12]

### i. Plaintiff does Not Plead a Plausible Claim of Discrimination (Count I)

It is unclear whether Plaintiff is pursuing her discrimination claim under a hostile work environment or disparate treatment theory. However, regardless of the theory pursued by Plaintiff, she fails to state a plausible claim of discrimination under either theory.

---

[12]    As a preliminary matter, Shapiro premises her entire discrimination claim on the basis that she was the "only Caucasian, Jewish, American female" in the Family Medicine residency program. Compl. ¶2. (emphasis added). However, being the only member of a protected group is not sufficient to create a plausible claim of discrimination. *See Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 57 (D.D.C. 2004) ("The mere fact that Ms. Singh was the sole non-Caucasian on the Committee staff does not, without something more, suffice to make the necessary causal connection between Ms. Singh's race, color, and national origin and the alleged mistreatment."); *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 65-66 (D.D.C. 2003) ("In the absence of some greater indicator of race or age bias, the uniqueness of plaintiff's race and age in her workplace cannot substantiate a claim that plaintiff's workplace was 'permeated with discriminatory intimidation, ridicule, and insult.'"); *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015) (stating that "it is not reasonable to infer that just because [Plaintiff's supervisors] were of a different national origin… than the plaintiff, all disciplinary actions they took against the plaintiff were motivated by these differences.").

**A. Shapiro does not plead a plausible claim of hostile work environment discrimination**

In order to allege  discrimination based on a hostile work environment theory, Shapiro must plead that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it. *Dorns v. Geithner*, 692 F. Supp. 2d 119, 135-36 (D.D.C. 2010) (*citing Hendricks v. Paulson*, 520 F. Supp. 2d 65, 89 (D.D.C. 2007)); *Roberson v. Snow*, 404 F. Supp. 2d 79, 89-90 (D.D.C. 2005).

The Supreme Court held that courts use a reasonable person standard to determine whether a hostile work environment exists.  *Oncale v. Sundowner Offshore Servs*., 523 U.S. 75, 81 (1998); *Harris v. Forklift Sys*., Inc., 510 U.S. 17, 21(1993).  This objective test requires examination of the totality of the circumstances, including "the frequency of the discriminatory [or retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. Importantly, isolated incidents "will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Moreover, while "[bosses] may be harsh, unfair and rude, [such] conduct so characterized does not necessarily rise to the level of a Title VII [hostile work environment] violation." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 188(D.D.C. 2012). Last, hugging and kissing during greetings do <u>not</u> create a hostile work environment. *See Grosdidier v. Chairman, Broad. Bd. of Governors,* 774 F. Supp. 2d 76, 108 (D.D.C. 2011).

Here, Shapiro does not plead a plausible hostile work environment discrimination claim based on her race, gender, religion or national origin. Rather, she merely chronicles several isolated

incidents completely unrelated to any protected category that no reasonable person would find objectively hostile. Shapiro merely pleads several stray incidents over the span of 10 months where she was provided an incorrect meal ticket, was counseled after she failed to attend required meetings, was counseled after she refused to provide medical treatment, was affirmatively provided notice that her attendance was potentially in violation of the ABFM requirements, was scheduled to work Christmas since she did not celebrate the holiday, and was hugged one time by Dr. Johnson. Compl. ¶¶ 8, 9, 15, 18-22, 35, and 46.[13] These isolated incidents do not create an objective hostile work environment. *See Moore v. Howard Univ.*, 2017 U.S. Dist. LEXIS 133648, *4, (D.D.C. 2017)(making two comments referencing an employee's race as well as creating false parking tickets as pretext to terminate an employee is not a hostile work environment at the motion to dismiss stage); *Daniel v. Johns Hopkins Univ.*, 118 F. Supp. 3d 312, 320 (D.D.C. 2015)(hitting an employee and referring to him as "boy" is not a hostile work environment under Title VII); *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 25 (D.D.C 2014)(holding that a supervisor yelling at an employee at two public meetings was not an objective Title VII hostile work environment); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 77 (D.D.C. 2013) ("even multiple instances of physical contact and sexual advances may not be sufficient to meet the demanding legal standard for a hostile work environment."); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 82 (D.D.C. 2007)(denial of 10 promotions does not create a hostile work environment).

---

[13]     Discrete allegations not contained with Shapiro's Charge of Discrimination filed at the EEOC should not be reviewed by this Court due to a failure to exhaust the administrative process. *See* ECF at1-1. The Court cannot review any allegation not made before the EEOC as it would deprive the EEOC of its conciliatory role and not make the employer aware of the charges against it. *See  Hicklin v. McDonald*, 110 F. Supp. 3d 16, 20-21 (D.D.C 2015); *Maryland v. Sodexho*, Inc., 474 F. Supp. 2d 160, 162 (D.D.C. 2007); *Marshall v. Federal Express Corp*., 130 F.3d 1095, 1098, (D.C. Cir. 1997). Here, Shapiro's Charge of Discrimination begins with events that occurred in December of 2016. Any allegation in the subject lawsuit that predates the allegations in the Charge of Discrimination should not be considered by the Court and would vastly prejudice Howard.

**B.  Shapiro does not plead a plausible claim of disparate treatment discrimination**

Shapiro likewise has not plead a plausible claim of disparate treatment discrimination. In order to establish disparate treatment discrimination, Shapiro must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452, 339  (D.C. Cir. 1999).

Shapiro does not plead a plausible claim of disparate treatment discrimination as Howard took no adverse employment action against her. Purely subjective injuries, such as dissatisfaction with reassignment, public humiliation or loss of reputation, or unhappiness over assigned duties are not adverse actions. *See Drielak v. McCarthy*, 2016 U.S. Dist. LEXIS 126841 (D.D.C. 2016) ("[Plaintiff's] exclusion from meetings did not constitute an adverse action because it did not "affect the terms, conditions, or privileges of [his] employment."); *Lester v. Natsios*, 290 F. Supp. 2d 11, 28 (D.D.C. 2003); Childers v. Slater, 44 F. Supp. 2d 8, 19 (D.D.C. 1999) ("Mere inconvenience and alteration of job responsibilities will not rise to the level of an adverse action."). Rather, an adverse employment action is something that generally affects a complainant's financial status. *See Russell v. Principi*, 347 U.S. App. D.C. 222, (D.C. Cir. 2001)(holding not everything that makes an employee unhappy is an actionable adverse action, instead an adverse action generally inflicts direct economic harm).

Most importantly, placement on a PIP or performance plan is **not** an adverse employment action. *Kelly v. Mills*, 677 F. Supp. 2d 206, 222 (D.D.C 2010) ("placement [on a PIP] had no effect on the terms or conditions of Mr. Kelly's employment and thus was not materially adverse because it did not cause a significant change in employment status.")(internal quotations omitted)(*citing Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009); *Taylor v. Small*, 350 F.3d 1286, 1293

(D.C. Cir 2003) ([PIPs are] not an adverse employment action when plaintiff "did not present any evidence [that the PIP] affected her grade or salary"); *Na'im v. Clinton*, 626 F. Supp. 2d 63, 78 (D.D.C. 2009) (attempts to place plaintiff on [a PIP] are not materially adverse actions for purposes of retaliation claim because "no evidence that they had any impact on plaintiff's employment.").

Shapiro does not plead any adverse action taken by Howard, especially considering that she voluntarily resigned in lieu of being placed on a PIP. Shapiro lists several actions during her employment to which she was subjectively dissatisfied but do not rise to the level of an adverse employment action.  Neither the March 9, 2017 warning letter from Dr. Johnson nor the April 12 and 13, 2017 correspondences from Dr. Filani qualify as an adverse employment action. Compl. ¶ ¶ 30, 46-49. While the former was merely a "warning letter" that did not contemplate or met out any specific discipline, the latter inventoried Shapiro's attendance in an attempt to provide her affirmative notice to assist her with coming into compliance per the ABFM guidelines. Exhs. 7-8. Additionally, Shapiro being notified that she was going to be placed on probation through a PIP is not an adverse action; here, she was never placed on a PIP since she resigned prior to receiving it. Compl. ¶¶ 69-70.

### ii.  Shapiro does Not Plead a Plausible Claim of Retaliation (Count II)

To state a claim for retaliation, Shapiro must allege: (1) that she engaged in a protected activity under Title VII; (2) that the employer took a materially adverse action against her; and (3) there exists a causal relationship between the protected activity and the materially adverse action. *McGrath v. Clinton*, 666 F.3d 1377, 1380, 399 (D.C. Cir. 2012).

Here, Shapiro cannot state a claim for retaliation as Howard did not take an adverse employment action against her. As stated above, the numerous warnings and notification of probation were not adverse employment actions and Shapiro voluntarily resigned from Howard.

Considering that Shapiro has not plead an adverse employment action, her retaliation claim must be dismissed with prejudice.

### c. Shapiro does Not State a Claim Upon Which Relief May be Granted for Discrimination Under the ADA (Count III)

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *see also* 29 U.S.C. § 794(a) (prohibiting discrimination by reason of an individual's disability). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of" an individual.  42 U.S.C. § 12102(2)(A);  *Flemmings v. Howard Univ.*, 198 F.3d 857, 860 (D.C. Cir. 1999).

To state a claim for failure to accommodate under the ADA, Shapiro must allege (1) that she was an individual who had a disability within the meaning of the ADA; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of her job; and (4) that the employer refused to make such accommodations. *Lytes v. D.C. Water and Sewer Auth.*, 527 F. Supp. 2d 52, 60 (D.D.C. 2007), aff'd, 572 F.3d 936, 387 U.S. App. D.C. 291 (D.C. Cir. 2009).

Under the ADA, temporary impairments of short duration are not qualifying life events that fall within the ADA. *See Adams v. Rice*, 531 F.3d 936, 947, 382 (D.C. 2008)(a temporary inability to work is not a disability under the ADA); *Duncan v. Harvey*, 479 F. Supp. 2d 125, 131 (D.D.C. 2007)("Courts are seemingly unanimous in the view that impairments whose effects last less than one year are insufficient to demonstrate a substantial limitation on a major life activity")(see cases cited therein); *Lester v. Natsios*, 290 F. Supp. 2d  at  24-25 (D.D.C. 2003) (holding that plaintiff who suffered from hypertension from late 1994 until sometime in 1995 did

not qualify as an individual with a "disability" under the Rehabilitation Act, a statute analogous to the ADA).

Here, Shapiro fails to state a claim for discrimination under the ADA as she does not plead a disability under the ADA. Shapiro merely pleads that: (1) after the alleged needle stick incident that she provided a note from her physician that she needed time off as well as help from residents and interns until she was fully recovered; and that (2) at some point she was injured and had her arm in a sling. Compl. ¶¶ 61, 63. These two instances of appearing at work and requesting time off and/or a temporary adjustment to her job duties are simply insufficient to establish that she had a disability that impacts one or more major life activities or that her employer was on notice of such a disability under the ADA.[14]

As such, Shapiro does not plead a qualifying disability under the ADA.

## V.       CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Defendants.


February 21, 2019                         Respectfully submitted,

                                         **HOWARD UNIVERSITY**

                                         _____/s/_____
                                         Zachary I. Shapiro
                                         Associate General Counsel
                                         D.C. Bar # 1021639
                                         Howard University
                                         2400 Sixth Street, N.W.
                                         Washington, D.C. 20059

---

[14] Shapiro providing a note from her physician requesting a temporary adjustment of duties is insufficient to request accommodation and/or put employer on notice of a disability requesting accommodations under the ADA. *See Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 659 (D.D.C 1997)(holding that a return to work note from a physician listing the temporary work restrictions of an employee "does not establish a record of an impairment that rises to the level of a disability protected" under the ADA.).

T: 202-806-2664
E-mail: zachary.shapiro@howard.edu


**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing MOTION TO DISMISS and MEMORANDUM

OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS were filed

electronically on  February 21, 2109 and sent via electronic and first-class mail to the Plaintiff.


_____/s/_____
Zachary Shapiro